## IN THE MATTER OF DANIEL V. PRESNICK
### (SAC 001)

DUPONT, C. J., BORDEN, SPALLONE, DALY, O'CONNELL, STOUGHTON, NORCOTT and FOTI, Js.

Argued December 12, 1988—decision released July 26, 1989

*Daniel V. Presnick,* pro se.

DUPONT, C. J. This matter arises out of an en banc show cause hearing conducted, sua sponte, by this court, after notice to a member of the Connecticut bar, Daniel V. Presnick, to determine whether he should be barred from filing in this court, "any papers, including the filing of an appearance on behalf of a party other than himself, and from appearing in Court," as a result of his failure to comply with a prior order of this court. Presnick appeared at the hearing, argued, and subsequently submitted a brief.

The issue raised by the show cause order and the hearing is whether this court has the power to impose the sanction of a suspension from practice before this court when an order of the court has been disobeyed. We hold that we do.

The prior order of this court that was the basis of the show cause hearing was that Presnick, the pro se defendant in the case of *Esposito* v. *Presnick,* 15 Conn. App. 654, 546 A.2d 899, cert. denied, 209 Conn. 819, 551 A.2d 755 (1988), should pay the sum of $500 as a sanction for his failure to attend a preargument settlement conference in that case.[1] Presnick was ordered to pay that sum to the chief clerk of the Appellate Court

---

[1] The preargument settlement conference program is an essential program of this court, allowing the disposition by settlement of many cases that would otherwise require written decisions, usually after oral argument. So essential is the program considered that our rule on sanctions, Practice Book § 2036, specifically provides that the failure to attend a conference will subject an offender to "appropriate discipline," and that offenders subject to such discipline include pro se parties.

A full discussion of the circumstances surrounding the imposition of the sanction of the $500 appears in *Esposito* v. *Presnick,* 15 Conn. App. 654, 546 A.2d 899, cert. denied, 209 Conn. 819, 551 A.2d 755 (1988). In that case, we found that the refusal to obey the order that imposed the sanction was a violation of Rule 8.4 of the Rules of Professional Conduct and directed that the matter of the defendant's misconduct be referred by the clerk of this court to the statewide bar counsel pursuant to Practice Book § 27F for appropriate action. The clerk did so and the Fairfield Judicial District Grievance Panel found probable cause that Daniel Presnick was guilty of misconduct due to a violation of Rule 8.4 (d). That panel then referred the matter to the statewide grievance committee for final action. The committee adopted the proposed decision of the reviewing subcommittee and decided that Presnick should be presented by the committee to the Superior Court for whatever discipline the Superior Court may deem appropriate. The jurisdiction of the grievance committee, or any action of it, or any future action of the Superior Court is not the subject of this decision. The sanction described in the show cause order of this court, and as imposed pursuant to this decision is independent of any other future punishment that may be imposed by the Superior Court after presentment to it. The grievance procedures of Practice Book §§ 27B through 31 need not first be exhausted before this court can exercise its independent and inherent jurisdiction. *In re Peck,* 88 Conn. 447, 91 A. 274 (1914); *Grievance Committee* v. *Goldfarb,* 9 Conn. App. 464, 519 A.2d 624, cert. denied, 203 Conn. 802, 522 A.2d 292 (1987); see also *United States* v. *Stillwell,* 810 F.2d 135 (7th Cir. 1987); *United States* v. *Gerrity,* 804 F.2d 1330 (7th Cir. 1986); *In re Herman N. Horwitz,* 21 Conn. Sup. 363, 154 A.2d 878 (1959); see Practice Book § 30, 50 Conn. L.J., No. 48, p. 6B (May 30, 1989), effective September 15, 1989.

who, in turn, was directed to make payment of the same sum to the opposing counsel in the case.[2] The money has never been paid.

At the show cause hearing, and in his brief, Presnick basically argues that there is no specific rule of this court that provides for the sanction of prohibiting an attorney from appearing in this court or filing papers in this court on behalf of others, and, therefore, no such sanction can be imposed. He further argues that this is particularly the case when the underlying behavior of the attorney that is the cause of the sanction arises in a case in which he or she appeared pro se. He further claims that the proposed sanction is tantamount to disbarment in this court and that before such a sanction may be imposed, federal constitutional due process requires that a fair and impartial hearing be held after reference by this court to an impartial factfinding body.[3]

Presnick's arguments, then, are that this court is powerless to impose the sanction of preventing him from practicing law in this court because the behavior of which we complain occurred while he was acting pro se, that there is no specific rule of this court providing

[2] A hearing was held in this court before the monetary sanction was imposed and the defendant had notice, actual or constructive, of the published rule, namely, that the failure to attend a preargument conference can result in a sanction, including a monetary sanction. Practice Book § 2036; compare *In re Mongillo*, 190 Conn. 686, 461 A.2d 1387 (1983).

[3] Presnick makes other arguments that relate to the imposition of the $500 fine, rather than the imposition of the sanction involved in the show cause hearing that is the subject of this decision. He claims that because he believed that the preargument settlement conference could be of no value to him, he did not have to attend and that, not having attended, he was never subject to the jurisdiction of the settlement program. He claims, therefore, this court never acquired jurisdiction over him that could compel his attendance at the settlement conference. We decline to address these arguments because they do not relate to the subject matter of this decision, namely, the show cause order.

for such a sanction, and that without a finding of facts by an impartial body his due process rights were violated.

It is undisputed that the failure to pay the $500, which was the original sanction imposed, arose while Presnick was representing himself, as opposed to representing another in his capacity as a member of the bar of this state. Although misconduct of an attorney may be unconnected with representation of another as a member of the bar, punishment may be imposed for that misconduct because it is an indication of a general unfitness to practice law. *Grievance Committee* v. *Broder,* 112 Conn. 269, 274, 152 A. 292 (1930); *In re Peck,* 88 Conn. 447, 450, 91 A. 274 (1914). The practice of law is a privilege and if an attorney "by misconduct *in any capacity,* discloses that he . . . is an unfit . . . person to be entrusted with the responsibilities and obligations of an attorney, his right to continue in the enjoyment of his professional privilege may and ought to be declared forfeited." (Emphasis added.) Id. Failure to obey an order of a court is inimical to the responsibilities of a member of a bar as an officer of that court and whether the disobedience arises from representing oneself or another in a professional capacity makes no difference.

Our sanction rule, Practice Book § 2036, provides in relevant part: "The following will subject an offender, at the discretion of the court, to appropriate discipline . . . . (1) Failure to comply with rules and orders of the court. . . . Offenders subject to such discipline include both counsel and pro se parties." The rule is entirely clear that pro se parties will be subject to discipline for violations of the court's rules.

There has been an increasing tendency in many courts to impose severe sanctions on those who undertake to represent themselves but abuse the process of

the courts to the detriment of other litigants and to the detriment of the court. See, e.g., *In re Martin-Trigona,* 737 F.2d 1254 (2d Cir. 1984); *Matter of Hartford Textile Corporation,* 681 F.2d 895 (2d Cir. 1982); *Sparrow* v. *Reynolds,* 646 F. Sup. 834 (D.D.C. 1986). Those sanctions may be imposed whether the malfeasor was, or was not, an attorney or was an attorney representing himself or others. See *Browning Debenture Holders' Co.* v. *Dasa Corporation,* 605 F.2d 35 (2d Cir. 1978). Since a client may be punished for the transgressions of his attorney; *Gionfrido* v. *Wharf Realty, Inc.,* 193 Conn. 28, 474 A.2d 787 (1984); there is no compelling reason not to punish that same client who chooses himself as an attorney. Whether an attorney represents himself or not, his basic obligation to the court as an attorney remains the same. He is an officer of the court no matter who is the client. Disciplinary proceedings not only concern the rights of the lawyer and the client, but also the rights of the public and the rights of the judiciary to ensure that lawyers uphold their unique position as officers and commissioners of the court. *Heslin* v. *Connecticut Law Clinic of Trantolo & Trantolo,* 190 Conn. 510, 461 A.2d 938 (1983). An attorney must conduct himself or herself in a manner that comports with the proper functioning of the judicial system. *Chang* v. *Meese,* 660 F. Sup. 782 (D. Puerto Rico 1987).

The special relationship between courts and their officers, those attorneys who practice before them, requires a court to monitor the conduct of those officers of the court.[4] *Statewide Grievance Committee* v.

---

[4] It is increasingly the case that both federal and state courts have been exercising their power to discipline those attorneys who appear before them by imposing various sanctions, including sanctions that affect the outcome of the particular litigation in which the misconduct occurred. See, e.g., Levin & Sobel, "Achieving Balance in the Developing Law of Sanctions," 36 Cath. U.L. Rev. 587 (1987); Risinger, "Honesty in Pleading and Its Enforcement: Some 'Striking' Problems with Federal Rule of Civil Procedure 11," 61

*Rozbicki,* 211 Conn. 232, 558 A.2d 986 (1989). The purpose of such control is to protect the public from the effects of possible future misconduct by an officer of the court. The protection needed is no less necessary because the miscreant behavior occurs while the officer represents himself.

Presnick had a right to represent himself. He has no right, however, to expect that self-representation to clothe him with immunity from conforming to the behavior required of an officer of the court. A lawyer's primary obligation is to the court and if there is a conflict between what he or she perceives as the interest of the client and the duty owed to the court, the latter must prevail. Here, the identity of client and lawyer merged. Presnick's obligation to obey the court's order transcended his belief that, as his own client, he did not have to attend the preargument settlement conference or pay the $500. We hold that the fact that Presnick's failure to obey an order of this court occurred while he represented himself is not a bar to the imposition of a sanction that relates to his representation, as an attorney, of others.

Presnick also argues that this court has no specific rule providing for the sanction described in our show cause order, and that, therefore, we cannot impose such a sanction. Practice Book § 2036 does not specifically provide that a sanction against a member of the bar who appears before us might be the prohibition of filing papers in this court or appearing in this court. The

Minn. L. Rev. 1 (1976); note, "Plausible Pleadings: Developing Standards for Rule 11 Sanctions," 100 Harv. L. Rev. 630 (1987); annot., Award of Damages or Costs Under 28 USCS § 1912 or Rule 38 of Federal Rules of Appellate Procedure, Against Appellant Who Brings Frivolous Appeal, 67 A.L.R. Fed. 319 (1984); annot., Sanctions, in Federal Circuit Courts of Appeals for Failure to Comply with Rules Relating to Contents of Briefs and Appendixes, 55 A.L.R. Fed. 521 (1981); annot., Dismissal of Appeal for Appellant's Failure to Obey Court Order, 49 A.L.R.2d 1425 (1956).

rule does, however, subject offenders, namely those who violate the rules and orders of this court, to "appropriate discipline." A discussion of Presnick's claim necessarily involves a discussion of the sources of the power of courts. We hold that the sanction proposed by our show cause order is included within the words "appropriate discipline" because we conclude that we have both the inherent and statutory power to impose such a disciplinary sanction, and that the sanction is warranted on the facts of this case.

There are three possible sources for the authority of courts to sanction counsel and pro se parties. These are inherent power, statutory power, and the power conferred by published rules of the court. The power of a court to manage its dockets and cases by the imposition of sanctions to prevent undue delays in the disposition of pending cases is "of ancient origin, having its roots in judgments . . . entered at common law, e.g., 3 Blackstone, Commentaries (1768), 295–296, and dismissals . . . e.g., id., at 451." *Link* v. *Wabash Railroad Co.,* 370 U.S. 626, 630, 82 S. Ct. 1386, 8 L. Ed. 2d 734, reh. denied, 371 U.S. 873, 83 S. Ct. 115, 9 L. Ed. 2d 112 (1962). That power may be expressly recognized by rule or statute but it exists independently of either and arises because of the control that must necessarily be vested in courts in order for them to be able to manage their own affairs so as to achieve an orderly and expeditious disposition of cases. Id; *Petition for Integration of Bar of Minnesota,* 12 N.W.2d 515 (Minn. 1943). Simply stated, "[t]he inherent powers of . . . courts 'are those which are necessary to the exercise of all others. *United States* v. *Hudson,* 7 Cranch 32, 34, 3 L. Ed. 259 (1812)." *Roadway Express, Inc.* v. *Piper,* 447 U.S. 752, 764, 100 S. Ct. 2455, 65 L. Ed. 2d 488 (1979).

The cases are legion, both federal and state, that provide that by rule, statute, or the use of inherent power,

courts must be able to discipline members of the bar, and others who appear before the courts, in order to compel observance of their rules and orders. *Statewide Grievance Committee* v. *Rozbicki,* supra; see also *Thode* v. *Thode,* 190 Conn. 694, 462 A.2d 4 (1983); *Heslin* v. *Connecticut Law Clinic of Trantolo & Trantolo,* supra; *Fattibene* v. *Kealey,* 18 Conn. App. 344, 358–60, 558 A.2d 677 (1989); *In re Greathouse,* 248 N.W. 735 (Minn. 1933).

Attorneys admitted to the practice of law in this state are attorneys of all courts of the state and "shall be subject to the rules and orders of the courts before which they act." General Statutes § 51-84 (a). "Any such court . . . may suspend or displace an attorney for just cause." General Statutes § 51-84 (b).

The Supreme Court governs the admission to practice law in all of the courts of this state. Those admitted to practice in this state, therefore, are authorized to practice in the Appellate Court without any special or particular admission to the Appellate Court. See R. Martineau, Modern Appellate Practice: Federal and State Civil Appeals (1983) § 18.9. Each court in the Connecticut constitutional hierarchy, however, is free to formulate its own rules relating to the practice and procedure to be followed in that court. Thus, there are Superior Court, Appellate Court and Supreme Court rules. Furthermore, any court established by our state constitution has an inherent power, independent of any statute, to make rules governing the procedure to be followed in it. *State Bar Assn.* v. *Connecticut Bank & Trust Co.,* 145 Conn. 222, 232, 140 A.2d 863 (1958). The Appellate Court is a constitutional court; Conn. Const., amend. XX, § 1; and, therefore, may make and enforce its own procedural rules.

Thus, it is not only the Superior Court that may order a suspension from the practice of law. "Any other court

. . . may [also] fine an attorney for transgressing its rules and doubtless has the power to forbid him from appearing before it . . . ." *Fairfield County Bar* v. *Taylor,* 60 Conn. 11, 12, 22 A. 441 (1891). The purpose of suspension from practice is to protect courts from the conduct of attorneys who are unfit to practice. *In re Application of Pagano,* 207 Conn. 336, 339, 541 A.2d 104 (1988).

General Statutes § 51-84 (b), when read in conjunction with § 51-84 (a), specifically states that a court "may suspend or displace [attorneys] for just cause." Suspension need not be permanent or total. *In re Application of Dimenstein,* 36 Conn. Sup. 41, 43, 410 A.2d 491 (1979). Suspension may be summary, and is an inherent power of the particular constitutional court. See *In re Durant,* 80 Conn. 140, 147, 67 A. 497 (1907).

As long as there is no denial of due process, we conclude that this court may, for good cause, discipline attorneys who practice before it by suspending them from practice in this court for a reasonable and stated period. *In re Application of Courtney,* 162 Conn. 518, 523, 294 A.2d 569 (1972); see *In re Solerwitz,* 848 F. 2d 1573 (Fed. Cir. 1988), cert. denied, 488 U.S. 1004, 109 S. Ct. 784, 102 L. Ed. 2d 775 (1989); *In re Boucher,* 837 F.2d 869, reh. granted, 850 F.2d 597 (9th Cir. 1988); *United States* v. *Ford,* 806 F.2d 769 (7th Cir. 1986); *United States* v. *Gerrity,* 804 F.2d 1330 (7th Cir. 1986); *In the Matter of Campos,* 737 F.2d 824 (9th Cir. 1984); *In re Bithoney,* 486 F.2d 319 (1st Cir. 1973).

Even where there has been no notice of the possibility of a particular sanction, and no rule providing for such a sanction, the sanction is not necessarily void. *Link* v. *Wabash Railroad Co.,* supra, 632. In that case, the United States Supreme Court upheld the dismissal of the plaintiff's case because of a failure to attend a

pretrial conference. Courts have inherent power, not granted by rule or statute, but by the control necessarily vested in courts, to manage their own affairs to achieve an orderly and expeditious disposition of cases. "[W]hen circumstances make such action appropriate, a [court] may [invoke a sanction] even without affording notice of its intention to do so or providing an adversary hearing before acting. Whether such an order can stand . . . depends not on power but on whether it was within the permissible range of the court's discretion." Id., 633.

The particular type of misconduct by attorneys that has resulted in time limited or indefinite suspension from practice before a particular court varies. Such suspension has resulted when the attorney violated a rule relating to a briefing schedule; *United States* v. *Gerrity,* supra; *United States* v. *Ford,* supra; when an appeal was filed for the purposes of delay; *In the Matter of Campos,* supra; when misrepresentations of facts were made in a brief; *In re Boucher,* supra; or when frivolous appeals were filed; *In re Solerwitz,* supra.

The "appropriate discipline," as provided in our rules, can encompass sanctions, other than monetary sanctions, which we, in the sound exercise of our discretion, believe to be warranted. See *Donaldson* v. *Clark,* 819 F.2d 1551 (11th Cir. 1987). In this case, after a hearing, we ordered Presnick to pay $500 as a sanction for his failure to attend a preargument settlement conference. That monetary sanction was ordered on June 4, 1987, after a hearing. Presnick has been given every opportunity to pay it, but he has failed to do so since the date of the order. The sanction of prohibiting him from filing or appearing in this court for a definite period of time will serve to protect the court, litigants, and any future clients of Presnick from further malfeasance and is an appropriate corrective measure.

Presnick's last claim is that the sanction described in the show cause order could not be imposed unless an impartial body held a hearing and found facts sufficient for the imposition. We agree that the sanction will have a professional and economic impact and, that, therefore, due process must be afforded. See *Oliveri* v. *Thompson,* 803 F.2d 1265 (2d Cir. 1986); *In re Bithoney,* supra; *Grievance Committee* v. *Goldfarb,* 9 Conn. App. 464, 519 A.2d 624 (1987). Although we agree that ordinarily due process would require that a hearing be held before sanctions can be imposed, we do not agree that the hearing must be an evidentiary one. *Oliveri* v. *Thompson,* supra, 1280; *Markel* v. *Scovil Mfg. Co.,* 657 F. Sup. 1102 (W.D.N.Y. 1987); Levin & Sobel, "Achieving Balance in the Developing Law of Sanctions," 36 Cath. U.L. Rev. 587, 607 (1987).

The right to a hearing is limited to cases in which a hearing would assist the court in its decision, usually because there is a contested factual issue to be resolved. *Hill* v. *Norfolk & Western Railway Co.,* 814 F.2d 1192, 1200 (7th Cir. 1987); see also *Mays* v. *Chicago Sun-Times,* 865 F.2d 134 (7th Cir. 1989). The conduct to be censured in the present case is the failure of the defendant to pay $500 after having been ordered by this court to do so. There is no contested factual issue, and this court is thoroughly familiar with all of the relevant facts. See, e.g., Fed. R. Civ. P., Notes of Advisory Committee on Rule 11; compare *Fattibene* v. *Kealey,* supra.

We hold that this court may, after reasonable notice and after affording an opportunity to an attorney to show cause to the contrary, take appropriate disciplinary action against an attorney who practices before it for conduct that is an affront to the court's authority or that interferes with the ability of this court to process its cases in an orderly and expeditious manner. See *In re Solerwitz,* supra. An attorney is entitled to

a fair determination of whether a further sanction should be imposed after an admitted failure to comply with a prior sanction, but the precise procedure to obtain that result is for a court to determine. *In re Durant,* supra, 148. Presnick had such a fair determination and was afforded the due process to which he was entitled.

Daniel V. Presnick is prohibited henceforth from filing any papers in this court and from making an appearance in this court for a period of six months. After that period, and upon the payment of $500 as previously ordered by this court, and upon the filing and granting of a motion for reinstatement, the defendant may resume practice before this court if he is otherwise qualified to practice law in the courts of this state.

In this opinion the other judges concurred.